[No. 7658.]

KENEHAN v. STATE BOARD OF MEDICAL EXAMINERS.

1. STATE BOARD OF MEDICAL EXAMINERS—*Control of its Funds.* Section 4, c. 189 of the Laws of 1911 is not in conflict with Rev. Stat. § 6071. It is within the authority of the State Medical Board to determine, absolutely, what expenditure shall be made of the funds arising in the lawful discharge of its duties, subject only to the statutory requirement that at the close of each biennial period the balance shall be transferred to the General Fund of the State. These funds do not arise from any appropriation of the legislature, but from fees and fines collected by the Medical Board; and the Medical Board may withdraw such sums as are necessary to meet its obligations, either present or ensuing within the biennial period. But its financial affairs must begin with and be closed at the end of, each biennial period. It may not withdraw funds near the close of one biennial period, for the purpose of depositing them during a succeeding biennial period, to meet expenses during such succeeding period. This would defeat the clear purpose of the statute. (509, 511)

2. POWERS OF AUDITOR AND TREASURER. Shortly before the end of the biennial period in each of the years 1906 and 1908 the Medical Board had drawn large sums from the custody of the Treasurer, leaving, at least in one of those years, no money at all to the credit of the fund. December 31, A, D. 1910, the auditor, by an entry in his books, assumed to transfer from the fund, of the Medical Board, a sum, the exact amount of the money so withdrawn in 1906, 1908; this upon the belief or suspicion that the withdrawal and subsequent deposit of those sums was a mere subterfuge, to enable the Medical Board to retain these moneys within their own control, and thus defeat the statute; and upon the opinion that it was within both his power and duty to

make such withdrawal and transfer, in order to defeat the supposed unlawful conduct of the Medical Board.

*Held* that while the facts set forth in the agreed case upon which the cause was submitted were sufficient to justify the suspicion of the auditor, the matter was not for his arbitrary determination; that the civil and criminal conduct of the members of the Medical Board are for judicial determination, after full hearing.    (509, 510)

The duty of the State Treasurer in this respect is purely ministerial.    The transfer to the General Fund directed by the statute must be made at the date prescribed and only to the amount in the custody of the Treasurer, at that date.    The Treasurer has no power to make the transfer as of any other date, nor to review any of the official acts of the Medical Board.    (509)

*Error to Denver District Court.*—Hon. CARLTON M. BLISS, Judge.

Hon. BENJAMIN GRIFFITH, Attorney General, Hon. CHARLES O'CONNOR, First Assistant Attorney General, for plaintiff in error.

Mr. HARRY E. KELLY and Mr. CHARLES H. HAINES, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an action in mandamus against the State Auditor and the State Treasurer to compel the issuance of state warrants in payment of certain accounts purporting to have been contracted and allowed by the State Board of Medical Examiners in the exercise of the power and authority of said board.    These accounts are for the services of the secretary of the board, and other employees.    The State Board of Medical Examiners, having been made a codefendant in the action, filed its answer admitting the allegations of the complaint, and demanding, in its own behalf, that the relief prayed for in the complaint be granted.    At the time of the institution of this proceeding in the District Court, the plaintiff in error, Roady Kenahan, was State Auditor, and the defendant below, Michael A. Leddy, was State Treasurer, and for the of-

ficial term prior thereto these offices were held by the same persons, but in reverse order. The total of the accounts involved is $600, and purport to have been for services performed within the biennial period ending November 30th, 1912, and the vouchers were executed and presented for payment within that period, with the exception of one voucher in the sum of one hundred dollars which purports to be for services rendered by Jane V. Barber, during the biennial period ending in 1910. The case was tried on an agreed statement of facts, in substance as follows: (1) That at the time of the filing of the suit, there was the sum of $597.92 only, in the custody of the treasurer belonging to the medical board fund; (2) that prior to the close of the biennial term ending in 1906, the sum of $469.31 was withdrawn by the medical board upon warrant, for the purpose of paying certain prospective expenses arising from pending litigation in which the board was involved in the course of its official duties; that at the close of said biennial period there was no money in said fund in the custody of the treasurer; (3) that shortly prior to the close of the biennial period ending in 1908, the sum of $140 was withdrawn from said fund, upon warrant, partly for the purpose of returning to unsuccessful applicants for license to practice medicine, and partly for expenses of litigation; (4) that in January, 1909, and during the biennial period ending in 1910, there remained in the hands of the board a balance of the sums so withdrawn of $597.92, and that this sum was at such time deposited with the state treasurer to the credit of the Medical Board Fund; that thereafter this sum of money so paid into the fund was frequently reduced below the amount of said deposit, upon the lawful withdrawals by the medical board; (5) that at the close of the biennial period ending in 1910, the books of the State Auditor showed the sum of $470.08 to be to the credit of the Medical Board Fund, but that prior to said date, vouchers in the total sum of $470 had been presented to the State Auditor, for which the said official had refused

to honor or to issue his warrants;  (6)  that during the biennial period ending in 1912, and in the month of December, 1910, the sum of $680 was deposited to the credit of the said fund, but that thereafter, to-wit, on the 31st day of December, 1910, the State Auditor, by an entry on his books, purported to transfer the sum of $597.92 from said Medical Board Fund to the General Revenue Fund of the state.

The trial court ordered the issuance of the writ as prayed.  It seems to have been the theory of the Auditor in this matter that, inasmuch as this last named sum was the exact amount remaining in the hands of the board as an unused part of the two withdrawals in 1906 and 1908, it was his duty, and within his power, to transfer that amount from the Medical Board Fund, to the General Revenue Fund, at the time and in the manner as stated.  This action was based, apparently, upon the conclusion of the Auditor that these two sums so withdrawn and unused during the periods ending in 1906 and 1908, and the deposit thereafter of this portion of these unused amounts during the succeeding periods, was a subterfuge intended to prevent the same from being transferred, as provided by the statute, at the close of the biennial period, to the General Revenue Fund of the state.

The facts, as appearing from the agreed statement, are sufficient to justify a very grave suspicion of the truth of the conclusions reached by the State Auditor.

The powers and duties of the Board of Medical Examiners, as well as those of the state officers, involved, in so far as affected by the present case, are provided by section 6071 Rev. Stats., 1908, as follows:

"All fees received by the State Board of Medical examiners and all fines collected by any officer of the law under this act, shall be paid to the Secretary-Treasurer of said board, who shall, at the end of each and every month, deposit the same with the State Treasurer, and the said State Treasurer shall place said money so re-

ceived in a special fund to be known as the Fund of the State Board of Medical Examiners, and shall pay the same out on warrants drawn by the Auditor of State therefor, upon vouchers issued and signed by the President and Secretary-Treasurer of said board. Said moneys so received and placed in said fund may be used by the State Board of Medical Examiners in 'defraying their expenses in carrying out the provisions of this act. At the end of every biennial period, if there shall remain in said fund any balance, said balance shall be transferred to the General Revenue Fund of the state. The Secretary-Treasurer of said board shall keep a true and accurate account of all funds received, and all vouchers issued by the board; and on the first day of December of each year he shall file with the Governor of the state a report of all receipts and disbursements for said board for the preceding fiscal year.

Members of the board shall receive a *per diem* for the time during which they shall be actually engaged in the discharge of their duties; and the Secretary-Treasurer shall receive a salary; said *per diem* and salary shall be fixed by the board, and together with all other expenses shall be paid out of the "Funds of the State Board of Medical Examiners."

It is admitted by counsel for the board that section 4, chapter 189, Laws of 1911, does not change or amend section 6071 Rev. Stats., 1908, but it is said that said section is a statutory construction of the latter section, and interprets the same as giving to the board, plenary power over its revenue. This section is as follows:

"Funds lodged with the State Treasurer under this act which are not creditable to the General Revenue of the State, and which have been or may be by law designated for purposes other than such General Revenue, shall not be deposited in the Treasury of the State or considered therein, but shall be held by the State Treasurer as custodian, separate and apart from such funds, and may be withdrawn from his custody, for the purposes and under the control of the officers now or hereafter

vested with authority so to do, subject, however, to the requirement of vouchers and warrants, as above described.''

Chapter 189, Laws of 1911, is an act, general in its character, intended to compel the deposit of all funds with the State Treasurer, whether belonging to the state, or to any institution, department, bureau, or officer, and providing a method for the withdrawal thereof in all cases. Said section 4 is not in conflict with the provisions of the medical board statute, but is in harmony with it. That section does not pretend to repeal the provisions of the medical act requiring the transfer, to the state, of the unused part of the medical board fund at the close of each biennial period.

Under these legislative acts, it is clearly within the power and authority of the Board of Medical Examiners to determine absolutely the question of expenditure of the funds arising within the lawful discharge of its duties, except only that in case of any balance remaining in the custody of the treasurer at the close of any biennial period, such balance shall be transferred to the General Fund of the state, and becomes the property of the state at that time. The treasurer has no other power or authority in this respect than to make the transfer of such funds, and only such funds, as shall appear to be in his custody at the close of a biennial period. These duties are purely ministerial, and the transfer provided must be made as of that date, and in the amount in the custody of the treasurer on such date. The fact in this respect, as disclosed by the record, must control. These funds do not arise from any appropriation by the legislature, nor from receipts by the state from any source, but from fees and fines collected by the State Board of Medical Examiners, and the disposition of which is entirely within the judgment, discretion and control of such board, except only that all must be deposited with the state treasurer in a specifically named fund at the close of each month, and to be withdrawn therefrom upon the order of the board alone. The Treasurer has but one act to otherwise per-

form in relation to such fund, and that is to transfer the balance in such fund remaining at the close of the biennial period. He has no power to make this transfer as of any other date, nor is he given any authority or power to in any manner review or pass upon any of the official acts of the board. The statute confers upon the board exclusive powers not only in this matter, but in all others covered by the statute creating the board of medical examiners. The members of this board are made public officials, and must be presumed to have discharged their duties honestly and within the scope of their authority. The balance referred to does not become the property of the state until the very close of the biennial period, and then to the extent and in the amount at that time within the custody of the treasurer. It may be that the Board of Medical Examiners has in this case exceeded its powers, or abused its discretion, or that it has wilfully violated the law and abused the trust imposed, and that in so doing it has deprived the state of a sum of money rightfully belonging to it under the law; but this is not a matter for the arbitrary determination of the State Auditor, to be disposed of by an entry on his books. The powers, duties, conduct and integrity of public officials are not to be so judged. The members of this board are answerable for their official conduct to the chief executive of the state, and their civil or criminal liability is a question for judicial determination, upon a full and complete hearing in the light of the law, and the facts appearing. It would seem that the clear intent of the statute is that the board shall deposit all its receipts with the State Treasurer at the end of each month, and that it may withdraw from the treasury such sums as may be necessary to meet its fixed obligations, either contracted or performed, within a given biennial period, but that its financial affairs must be closed at the end of each of such periods, as in case of other state officers, so that the definite amount, if any, which shall then become the property of the state may be determined and transferred to the state fund. Clearly, the board may not withdraw such funds at a

time near the close of one biennial period, for the purpose of again depositing the same during a succeeding biennial period, to defray expenses and obligations occurring in and during such succeeding period. Such action would be nothing less than to defeat the language and purpose of the statute, and to thereby deprive the state of its lawful due, and to which it is, in reason and by statute, entitled for its expense and service in the matter of supervision. But the agreed statement of fact does not justify such conclusion in this case, whatever may be the facts otherwise existing.

The said voucher for one hundred dollars for services rendered during the biennial period of 1910, and for reasons stated in this opinion, cannot be allowed and must be excluded from the judgment. So modified, the judgment of the District Court is affirmed.

*En banc.*

WHITE and HILL, JJ., dissenting.